### 75151. JIM ROYER REALTY, INC. et al. v. MOREIRA.
(363 SE2d 10)

POPE, Judge.

In 1981 Nell and Roane Arrendale listed their home and lot on Lawrenceville Highway for sale with the brokerage firm of Century 21-Raymond Morris & Assoc., Inc. (Raymond Morris). The Arrendales took the property off the market when they were informed that the Georgia Department of Transportation (DOT) planned to widen Lawrenceville Highway. In October 1982 the Arrendales conveyed a portion of their property to the DOT by a duly recorded right-of-way deed. In December 1982 the Arrendales again listed the property for sale with Raymond Morris. Raymond Morris was given an exclusive listing, but was authorized to list the property with the Metro Listing Service, a multiple listing membership.

The facts show plaintiff Maria Moreira knew the property was listed with the Raymond Morris agency. Plaintiff claims she contacted defendant Judie Crawford, a licensed real estate agent associated with defendant Jim Royer Realty, Inc. (Jim Royer), "to help her in the purchase of the property." Since Jim Royer was a member of the multiple listing service, Crawford was authorized to show Moreira the property. On March 29, 1983 Moreira entered a sales contract to purchase the property. This contract incorporated by reference the full legal description of the property contained in the recorded deed and provided that the buyer would have a reasonable time to examine the title to the property and furnish the seller with any written objections. The closing took place on April 22, 1983, at which time the Arrendales delivered to Moreira a warranty deed conveying the prop-

erty "less and except that portion conveyed in the above described property at right of way deed at 4671, page 534, DeKalb County Records." The sales commission was paid solely by the Arrendales and, pursuant to the multiple listing agreement, was split between the two real estate agencies.

Several months after the closing, the DOT began to widen the highway, involving the 20-foot strip conveyed by the Arrendales in October 1982. Subsequently, Moreira filed suit against the Arrendales, the Raymond Morris agency, Faye Schwegel (the listing agent with Raymond Morris), the Jim Royer agency, Judie Crawford, the closing attorney and his law firm, and the DOT. Essentially claiming that she had not been aware or properly informed of the conveyance of the 20-foot right-of-way to the DOT, Moreira asserted fraud, negligent misrepresentation, and negligence. The trial court granted summary judgment for all of the defendants except Jim Royer and Judie Crawford, Crawford's motion being denied because she had never been served and thus was not subject to the court's jurisdiction. This interlocutory appeal by Jim Royer and Judie Crawford followed.

The issue in controversy is whether defendants entered into any agency relationship, with attendant fiduciary duties with plaintiff, the purchaser.[1] Defendants argue they are entitled to summary judgment because they owed no fiduciary duty to plaintiff, the purchaser. According to defendants, they participated in the sale only as the agent or "selling associate" of the listing broker pursuant to defendants' membership in the multiple listing service. Therefore, defendants acted as subagents of the sellers and owed a fiduciary duty only to the sellers. *Held*:

We agree that under the facts of this case defendants did not owe any special fiduciary duty to the purchaser. However, we do not assume a non-listed selling broker, acting through a multiple listing service, can never be a dual agent of the purchaser as well as the seller of residential real estate. " 'An agent may perform mere ministerial acts, involving no discretion, for one of the parties to the contract, though he is agent for the other party. . . .' [Cit.]" *Spratlin, Harrington & Thomas v. Hawn*, 116 Ga. App. 175, 182 (156 SE2d 402) (1967). Even if defendants Crawford and Jim Royer were subagents of the listing broker for purposes of sharing the commission fee, they could also have assumed certain duties in regard to plaintiff, the purchaser. See *Shaw v. Fillman*, 184 Ga. App. 364 (1) (361 SE2d 518) (1987).

The facts show plaintiff thought of Crawford as "her" agent in

---

[1] Perhaps this issue will soon be retired, since the newly revised Rule 520-1-.08 of the Rules of the Georgia Real Estate Commission, effective July 1, 1987, now requires the real estate agent to make a written disclosure of whether he or she is acting on behalf of the seller or the purchaser.

negotiating with the sellers and "their" agent. The testimony of seller Mrs. Arrendale indicates she also thought of defendant Crawford as plaintiff's agent. Nevertheless, by sworn affidavit defendant Crawford denied she entered into any special contract or understanding whereby she agreed to represent or advise the plaintiff. Although plaintiff argues otherwise, she presented no sworn testimony or other competent evidence to refute defendants' denial of a fiduciary or confidential relationship. Therefore, this case is distinguishable from *Shaw v. Fillman,* supra, in that no issue is presented of any relationship or understanding between the parties which would justify plaintiff's reliance on defendants to interpret the written sales contract or closing documents or would justify plaintiff's failure to read and understand those documents for herself.

*Judgment reversed. Birdsong, C. J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

While concurring with the ultimate holding that the appellants were agents of the seller of the realty, I do not agree with the reasoning of the majority opinion, because it misunderstands the legal consequences of a broker's participation in a multiple listing service.

"The seller-broker relationship is a special agency created and defined by the listing agreement between the parties. . . . The listing agreement may authorize the broker to list the property with a multiple listing service. A multiple listing service is basically an arrangement for brokers in a given locality to pool their listings and split their commissions. . . . Brokers who are members of the multiple listing service submit their listings to a central bureau which then publishes and distributes a catalog of available properties. Under traditional agency principles, a listing contract which authorizes the listing broker to list the property with a multiple listing service permits the listing broker to create a subagency with other members of the multiple listing service." *Stortroen v. Beneficial Fin. Co. of Colo.,* 736 P2d 391, 396 (Colo. 1987). In *Stortroen,* the Colorado Supreme Court left no grey area in holding that absent a written agreement of agency between the selling broker and the purchaser, the selling broker will always be considered the agent of the listing broker and subagent of the seller.

As noted by Judge Powell, "[i]t is recorded of Him 'who spake as never man spake,' that, 'seeing the multitudes, he went up into a mountain; and when he was set, his disciples came unto him: and he opened his mouth, and taught them, saying, . . . No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other.' " *Gann v. Zettler,* 3 Ga. App. 589 (60 SE 283) (1908). The law in this state heretofore,

prohibiting dual agency unless disclosed to the principal, generally has followed that teaching. The *Stortroen* court's analysis of the legal effect of a multiple listing service comports with that teaching. But the majority opinion finds it more enlightened to allow a silent dual agency.

*Shaw v. Fillman*, 184 Ga. App. 364 (361 SE2d 518) (1987), relied upon in part by the majority opinion, is inapposite here. That case involved business brokers, and no arrangement such as the multiple listing service in the instant case. As explained by the *Stortroen* court, and as understood and practiced by the real estate industry in this state until now, the legal consequence of a multiple listing arrangement is that the selling broker or agent is an agent of the listing broker and subagent of the seller. This is an unequivocal, hardfast, and workable rule, something definite and concrete that brokers, agents, sellers, and buyers can chew on. What the majority opinion serves instead is soggy toast.

Regardless of the menu, however, it is clear that the appellants were agents of the seller in this case. As agents of the seller, Crawford and Jim Royer certainly were not negligent in failing to advise Moreira to have private legal counsel or a title examination, so as to make absolutely sure that she understood the actual parameters of the property, since they had no duty to do so. Also, since no confidential relationship existed between Moreira and Crawford and Jim Royer, Moreira was bound to exercise ordinary diligence to verify any seller's representations before an action based on any fraud could be maintained. See *United Fed. Savings &c. Assn. v. Eubank*, 180 Ga. App. 402 (349 SE2d 268) (1986). The right-of-way conveyance was not a hidden fact; it was there to be seen if only one looked. Accordingly, summary judgment was appropriate for Jim Royer, and Judie Crawford as well, had she been subject to the jurisdiction of the court.

DECIDED OCTOBER 13, 1987 —
REHEARING DENIED NOVEMBER 16, 1987 — 

*Edward C. Stone, Quinton S. King*, for appellants.
*George Handelsman*, for appellee.